STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Clayton Lee BADGER, Respondent.

SCBD No. 3895.

Supreme Court of Oklahoma.

Oct. 17, 1995.

Allen J. Welch, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Jack B. Sellers, Jack B. Sellers & Associates, Sapulpa, for Respondent.

LAVENDER, Justice.

Complainant, the Oklahoma Bar Association, by letter from the General Counsel, notified this Court that respondent, Clayton Lee Badger, a licensed attorney, was convicted by one count information in the United States District Court for the Northern District of Oklahoma of the crime of knowingly and willfully receiving and possessing firearms, to wit: one HK MP5SD machine gun, caliber 9 mm and one silencer/suppressor, caliber 9 mm, which had previously been

transferred to respondent in violation of Chapter 53, Title 26, United States Code, in that no transfer tax had been paid as required by 26 U.S.C. § 5811, in violation of 26 U.S.C. § 5861(b). Respondent's sentence was three years probation and a $4,000.00 fine. The conviction is final.

In *State ex rel. Oklahoma Bar Association v. Badger,* 901 P.2d 790 (Okla.1993), we deferred an interim suspension of respondent under Rules 7.1–7.7, 5 O.S.1991, Ch. 1, App. 1–A, as amended, of the Rules Governing Disciplinary Proceedings (RGDP) and referred the matter to a Professional Responsibility Tribunal (PRT) for a hearing to consider whether the conviction demonstrated respondent's unfitness to practice law. In *Badger* we informed the parties that pendency of the Rule 7 proceeding did not foreclose appropriate disciplinary proceedings being instituted against respondent under Rule 6. Rule 6 proceedings were instituted with the filing of a complaint against respondent under Rule 6 (Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal), Rules 6.1–6.16, 5 O.S. 1991, Ch. 1, App. 1–A, as amended. The parties eventually entered into stipulated findings of fact and conclusions of law and the matter was submitted to the PRT. Part of the stipulation, etc. of the parties was an agreement to dismiss the Rule 7 proceeding. The stipulations also agreed to a recommendation that respondent receive a two year and one day suspension, effective December 15, 1991, the day respondent voluntarily closed his law practice and ceased engaging in the practice of law.

In addition to the stipulation, which we will detail more fully later, respondent testified at the hearing before the PRT and certain exhibits were introduced. The parties also agreed that a letter signed by respondent, which was attached to his answer, could be considered by the PRT and this Court in deciding the appropriate disposition of this matter. The PRT after considering all the information before it, found conduct warranting discipline, believed a suspension of two

1. Some of the information we relate comes from our review of the case of *United States v. Fleming,* 19 F.3d 1325 (10th Cir.1994), *cert. denied* —

years and one day was too severe and recommended to this Court a suspension of one year, effective December 15, 1991.

## STANDARD OF DETERMINATION IN BAR DISCIPLINARY PROCEEDINGS

In *State ex rel. Oklahoma Bar Association v. Miskovsky,* 824 P.2d 1090 (Okla.1991), we set out the standard of review in attorney disciplinary proceedings. We said:

> In disciplinary matters we are a licensing court acting in the exercise of our exclusive jurisdiction. *State ex rel. Oklahoma Bar Association v. McMillian,* 770 P.2d 892, 894 (Okla.1989). Our determinations are made *de novo* and neither findings of fact of the PRT nor its view of the weight of the evidence or credibility of witnesses are binding on us. *Id.* Further, no presumption of correctness attaches to the findings or conclusions of the PRT. *Id; State ex rel. Oklahoma Bar Association v. Braswell,* 663 P.2d 1228, 1230 (Okla.1983). . . . The ultimate decision-making authority rests with us. *McMillian, supra; State ex rel. Oklahoma Bar Association v. Samara,* 683 P.2d 979, 984 (Okla.1984). Finally, to warrant a finding against a lawyer in a contested case the charges must be established by clear and convincing evidence. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A.

*Miskovsky,* 824 P.2d at 1093; *State ex rel. Oklahoma Bar Association v. Flanery,* 863 P.2d 1146, 1147–48 (Okla.1993).

With these principles in mind we turn to a discussion of the misconduct charged.

## FACTS OF MISCONDUCT AND DISCUSSION [1]

Respondent was a private gun collector, who enjoyed hunting and target shooting. He sought to add to his collection. A friend (a building contractor and reserve Drumright police officer) of respondent introduced him to a federally licensed manufacturer and/or dealer in automatic weapons, a William

U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994); some from the record made before the PRT.

Fleming. Through this relationship respondent learned it was legal to own certain automatic weapons. Respondent decided to purchase the weapon involved in his conviction from Fleming. Both Fleming and his friend told respondent there were two ways to legally transfer the weapon pursuant to federal law. One was to directly transfer the weapon from the manufacturer/dealer which would involve the payment by the manufacturer of a $200.00 transfer tax/fee to the federal government. The other would be to transfer the weapon first to a law enforcement agency and then to respondent. This latter method would avoid the transfer tax/fee, as transfers to and from law enforcement agencies were exempt under the pertinent federal statutes. Respondent bought the weapon. Federal forms were filled out by Fleming indicating a transfer first to the Creek County District Attorney's Office and then from that Office to respondent. Fleming signed a federal transfer form to the DA's Office and an Assistant District Attorney, a Don Nelson signed a like form detailing a transfer to respondent. The weapon was never physically transferred to the DA's Office. No transfer tax was paid. Respondent took possession of the weapon before any transfer to him was approved by the Federal Bureau of Alcohol, Tobacco and Firearms (BATF). It turned out Fleming and respondent's friend were incorrect in their advice to respondent that it was legal to merely have a "paper" transfer to a law enforcement agency to avoid payment of the transfer tax.

Fleming was charged and convicted of two counts of conspiracy to violate the transfer tax provisions of the National Firearms Act and one count of making false statements on required BATF forms in order to avoid paying the applicable transfer taxes. *United States v. Fleming,* 19 F.3d 1325 (10th Cir. 1994), *cert. denied* —— U.S. ——, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994). One of the conspiracy counts was unrelated to the transaction involving respondent. The other conspiracy count and the false statement count actually involved two transactions, the one pertinent here involving respondent and another involving the friend who had introduced respondent to Fleming. Essentially,

Fleming's crime was that of setting up a scheme whereby the transfer of the weapon to the DA's Office was a sham and was done strictly to avoid paying the tax. We assume that respondent was benefitted by Fleming's failure to pay the transfer tax by a commensurate reduction (i.e. $200.00) in the price respondent was required to pay for the weapon he purchased from Fleming.

The Rule 6 complaint against respondent for misconduct was in three counts. The first charged that respondent illegally purchased, received and possessed three automatic weapons, the one detailed above and two others. This count recited respondent's federal conviction for receiving the firearm without the transfer tax having been paid. The second count charged that respondent committed fraud on the BATF when he purchased a second weapon from Don Nelson, wherein respondent forwarded a written transfer request to the BATF listing the DA's Office as the transferor, when, in fact, respondent knew Don Nelson was the owner (and thus transferor) of the firearm. The third count was withdrawn by complainant in the stipulations of the parties.

In the stipulations the parties agreed that respondent illegally received the machine gun (including suppressor) involved in the first count in that no transfer tax had been paid. They also stipulated to his conviction and the finality thereof. As to the second count and the purchase of a second automatic weapon, the parties stipulated that on or about the date of purchase from Don Nelson respondent forwarded a written transfer request to the BATF stating the transfer of the firearm was from the Creek County District Attorney's Office. The stipulations agreed that respondent's conduct was violative of Rule 8.4(b) of the Oklahoma Rules of Professional Conduct which provides as follows: "[i]t is professional misconduct for a lawyer to: ... commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects...." 5 O.S.1991, Ch. 1, App. 3A. We agree that respondent's conduct was violative of Rule 8.4(b) and believe that discipline is appropriate in this case.

Before the PRT respondent, either through his testimony or through his written submissions, took the position he actually believed Fleming and his friend when they told him the "paper" transfer to the DA's office was lawful. He denied having any fraudulent intent. He characterized his misdeed as a lack of judgment and indicated he should have checked with appropriate authorities (i.e. BATF) before purchasing the weapon(s) in this manner. We agree that respondent should have been more circumspect in regard to his purchasing of these weapons. Although we cannot get into the mind of respondent and conclusively know exactly what he actually believed in regard to this advice from Fleming and his friend, we do know this—respondent, in the face of advice which we deem facially suspect, merely stuck his head in the sand and relied on the facially questionable advice. Respondent's unfounded reliance on such advice led to his commission of a criminal act which we believe reflects adversely on his trustworthiness, his honesty and his fitness to practice law.

Complainant and respondent stipulated to the following mitigating factors: Respondent has been a member of the Oklahoma Bar Association since May 1985 and has not been previously disciplined. Before any criminal charges were filed against him, respondent voluntarily closed his law practice in December 1991, and ceased engaging in the practice of the law. Possession of the weapons involved were not illegal *per se,* and the only illegal acts committed by respondent in the transactions were failure to pay the transfer tax and the failure to physically transfer the weapon after written approval from the BATF. Further, the respondent has complied with all the terms of his probation (which ended on September 2, 1995), including the payment of the assessed fine. We further glean from the record that respondent fully cooperated with federal authorities after they questioned him about the transfer(s) and he helped in Fleming's prosecution. Respondent has also paid all costs associated with this disciplinary proceeding. The record also shows respondent was cooperative with complainant in its investigation of this matter.

The record further shows that respondent, during the time between December 1991 to the hearing before the PRT, has been running his family farming and ranching business. He also testified he has kept current in the law by attending required Continuing Legal Education courses or seminars and by reading his Oklahoma Bar Journals. Three letters were also submitted attesting to the good character of respondent by individuals who had known him for, at least, sixteen years. One was from a former pastor at the Oak Grove Baptist Church, one from a Drumright grocer active in community affairs and a third from a Creek County Commissioner. These letters showed respondent himself had been active in community affairs.

In another case involving violation of federal law with respect to weapons we disbarred an attorney upon his convictions of possession of an unregistered firearm and transfer of an unregistered firearm. *State ex rel. Oklahoma Bar Association v. Floyd,* 812 P.2d 378 (Okla.1991). *Floyd* is distinguishable from this case in that respondent was not charged with transferring any firearm and, in *Floyd,* the attorney failed to respond in the Rule 7 disciplinary proceeding applicable there. We, therefore, do not believe *Floyd* requires us to disbar respondent in the circumstances of this case.

■ We have said "[t]he purpose of a disciplinary proceeding is not to punish the lawyer, but to inquire into his continued fitness to practice law with a view to safeguarding the public, the courts and the legal profession." *Miskovsky, supra,* 824 P.2d at 1101; *Flanery, supra,* 863 P.2d at 1149. An additional purpose is to deter respondent from committing similar acts in the future and deterring the potential for misconduct by other attorneys. *State ex rel. Oklahoma Bar Association v. Gresham,* 556 P.2d 264, 267 (Okla.1976).

■ Considering the entire record in this matter we believe the appropriate discipline is a six month suspension. In *State ex rel. Oklahoma Bar Association v. Hogue,* 898 P.2d 153 (Okla.1995), we imposed a six month suspension for an attorney who had been convicted in a military tribunal of falsely

subscribing under oath a false statement concerning his drug use, failing a drug test and pleading guilty to driving under the influence and transporting an open container. In *State ex rel. Oklahoma Bar Association v. Willis*, 863 P.2d 1211 (Okla.1993), an attorney was suspended for fifteen months upon his conviction of obtaining controlled substances by misrepresentation.[2] In *State ex rel. Oklahoma Bar Association v. Lacoste*, 813 P.2d 501 (Okla.1991), a lawyer was suspended for one year for giving a check to the opposing party in a matter knowing he had previously stopped payment on the check. Although the circumstances in none of these cases are exactly analogous to those involved here we believe they indicate the proper range of discipline for the misconduct of respondent in this case. Each involved misconduct under Rule 8.4(b) and reflected adversely on the lawyer's honesty, trustworthiness or otherwise reflected adversely on the lawyer's fitness as an attorney. In our view, a six month suspension is appropriate considering all the mitigating evidence presented, including respondent's voluntary cessation from the practice of law in December of 1991[3], respondent's cooperation in the federal criminal matter and with complainant in this disciplinary proceeding, and the fact that respondent has not previously been disciplined by this Court.

■ Complainant and respondent have filed a joint brief in this matter requesting that we adopt the recommendation of the PRT, i.e. suspending respondent for a period of one year, but making the effective date of such suspension December 15, 1991, the date respondent closed his law practice. They cite *Gresham* for the view that such backdating of suspensions is allowed. Although we do not disagree that we have authority to make a suspension effective from a date anterior to the final order of discipline, such treatment is the unusual circumstance, not the norm. We have done so when an interim order of suspension was already in effect

prior to final disciplinary action or when a lawyer had already tendered his resignation from the Bar. *State ex rel. Oklahoma Bar Association v. Thompson*, 781 P.2d 824, 825 f.n. 5 (Okla.1989). *Gresham* appears to be the former situation. Our cases have, thus, shown that this Court is extremely reluctant to backdate a suspension in an attorney disciplinary matter. The question is, should we do so here? We believe that we should.

In the present case respondent was not suspended on an interim basis under Rule 7, but instead the matter was referred to the PRT for a recommendation on whether the circumstances surrounding the crime showed respondent's unfitness to practice law. The result was this Rule 6 proceeding where respondent eventually stipulated his conduct was violative of the Rules of Professional Conduct. Although the parties have stipulated respondent voluntarily ceased practicing law in December 1991, and our referral to the PRT occurred in April 1993, the matter was not resubmitted to this Court until March 27, 1995, when the parties filed their joint brief in support of the stipulated findings of fact and agreed conclusions of law. The parties' stipulations, etc. were filed in the matter on December 23, 1994, the date the PRT approved and accepted them. In view of the mitigating evidence described above and given the rather unusual circumstances of this case, which include 1) the parties' stipulation that respondent ceased practicing law in December 1991, and 2) the rather protracted length of time it has taken to have the matter submitted to us for final decision, we conclude it is appropriate to backdate any suspension of respondent to December 23, 1994, the date the parties filed their stipulations in this matter.

Accordingly, IT IS THE ORDER OF THIS COURT THAT RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF SIX MONTHS EFFECTIVE DECEMBER 23, 1994. IT IS ALSO THE ORDER OF THIS COURT

---

**2.** The suspension in *Willis* was made effective from the date of the lawyer's interim suspension under Rule 7.

**3.** Voluntary withdrawal from the practice of law prior to a criminal conviction, coupled with sub-

sequent abstention from professional activity is properly considered in mitigation of discipline to be imposed. *State ex rel. Oklahoma Bar Association v. Thompson*, 781 P.2d 824, 825 (Okla.1989).

THAT THE PARTIES' AGREEMENT TO DISMISS THE RULE 7 PROCEEDING IS APPROVED.

ALMA WILSON, C.J., KAUGER, V.C.J., and HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.