2012 OK 77

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Lewis B. MOON, (a.k.a."L.B. Moon"), Respondent.**

**SCBD No. 5847.**

Supreme Court of Oklahoma.

Sept. 18, 2012.

Loraine Farabow, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

John W. Coyle, III, Coyle Law Firm, Oklahoma City, Oklahoma, for Respondent.

## ORDER

¶ 1 On September 18, 2012, we promulgated *State ex rel. Oklahoma Bar Ass'n v. Moon*, 2012 OK 77, 295 P.3d 1. In *Moon*, the attorney was publicly censured and a deferred suspension period of two years and one day was imposed. During the period of suspension, Moon was ordered to: refrain from any and all use of alcohol or mind-altering substances; not partake of any illegal drugs; maintain participation in Alcoholics Anonymous, attend weekly meetings; sign and comply with conditions of a contract with Lawyers Helping Lawyers; complete any outpatient treatment program in which he was enrolled; waive all questions of confidentiality permitting notification to the General Counsel of the Oklahoma Bar Association of any default in terms of probation or deferred suspension; and pay costs of $1,459.55.

¶ 2 The complainant, Oklahoma Bar Association (Bar Association), filed an application for an order of interim suspension on September 19, 2012. The complaint and request for suspension was based on the filing of a criminal information on September 18, 2012 charging the respondent, Lewis B. Moon (Moon/attorney), with impersonating a police officer and disturbing the peace. On October 15, 2012, we issued an order in the cause referring the matter to the Professional Re-

sponsibility Tribunal for an expedited hearing on the suspension request.

¶ 3 On October 19, 2012, the Bar Association filed a Notice of Respondent's Breach of Terms of Deferred Sentence alleging that Moon, while in a state of intoxication, assaulted and battered a fellow attorney. An affidavit supporting the allegations also asserted that Moon threatened members of the attorney's family. The incident, which occurred on October 7th, is currently under investigation by the Oklahoma County District Attorney's Office.

¶ 4 In an attempt to protect the public, while at the same time affording Moon his due process, we determine that the issue of the attorney's breach of conditions imposed by *State ex rel. Oklahoma Bar Ass'n v. Moon*, 2012 OK 77, 295 P.3d 1, which may support suspension for a period of two years and one day, be combined with the matters currently before the Professional Responsibility Tribunal in the Interim Suspension proceeding. During the combined proceedings, the Professional Responsibility shall make all inquiries as directed of both the respondent and of the Bar Association as specifically set forth in the order of October 15, 2012.

¶ 5 IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT: the instant cause is referred to the Professional Responsibility Tribunal for consideration with the matter concerning interim suspension transferred by this Court's order of October 15th, 2012.

¶ 6 DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 25 DAY OF OCTOBER, 2012.

ALL JUSTICES CONCUR.

WATT, J.:

¶ 1 The Bar Association filed a three-count, Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A,[1] com-

---

1. There is nothing to suggest that the Bar Association should have proceeded under Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 10–A [Incapacity]. Despite the obvious misuse of alcohol during leisure

hours, the record is devoid of any evidence that Moon's drinking ever resulted in anything even approaching incapacity to practice law while under the influence of alcohol. There have been no client grievances filed and all testimony elicited

plaint against the attorney. It alleged the attorney violated Rule 8.4(b), Rules Governing Professional Conduct, 5 O.S.2011, Ch. 1, App. 3–A [criminal act reflecting adversely on a lawyer's honesty, trustworthiness, or fitness as an attorney][2] and Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1–A [engaging in acts reflecting adversely upon the legal profession, whether in a professional capacity or otherwise].[3] Although only two of the three counts arise from the respondent's having been arrested for driving while under the influence, all three charges involve misuse of alcohol while operating an automobile. At the hearing before the trial panel, the parties entered joint stipulations regarding the facts surrounding the charges and the recommendation for discipline.

¶ 2 In consideration of the facts and upon *de novo* review,[4] we hold that the clear and convincing evidence[5] supports the criminal charges relating to driving while under the influence and bringing disrepute on the legal profession. Furthermore, on the occasion of both arrests, the undeniable evidence demonstrates that the attorney also violated subsection (e) of Rule 8.4[6] in his attempt to achieve favorable treatment by stating his ability to influence improperly one or more government officials. As to discipline, we determine public censure and a deferred sentence of two years and one day appropriate during which the attorney shall: refrain from any and all use of alcohol or mind-altering substances; not partake of any illegal drugs; maintain participation in Alcoholics Anonymous, attending weekly meetings; sign and comply with conditions of a contract with Lawyers Helping Lawyers; complete any outpatient treatment program in which he is currently enrolled; waive all questions of confidentiality permitting notification to the General Counsel of the Oklahoma Bar Association of any default in the terms of probation or deferred suspension;[7] and pay costs

---

before the trial panel indicated that the attorney had never failed to diligently represent his clients or appeared in court while intoxicated.

2. Rule 8.4, Rules Governing Professional Conduct, 5 O.S.2011, Ch. 1, App. 3–A, providing in pertinent part:
"It is professional misconduct for a lawyer to:
... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
... (e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law ..."
Transcript of proceedings before the Trial Panel, April 26, 2012, Moon testifying in pertinent part at p. 52:
"... Q Okay. But along with the questions that Mr. Gaither was asking you, were you name dropping to try to get out of the arrest or trying to establish a rapport?
A Yeah, I was already—I was already arrested and I was trying to establish a rapport. Jackson Hole is a very small community...."
Exhibit 16, Transcript of L.B. Moon and Bedford Arrest, providing in pertinent part:
at p. 8: "... Cop: But you guys are acting worse than anybody I've had in here....
Moon: Bullshit. You lying fucking—I've—I'll tell you what—Judge Elliott, I'll tell you what, Judge Twyla Mason Gray, Judge Elliott—everybody will believe me! ..."
at p. 12: ... Moon: You know what? I've got a badge. I've got an Oklahoma County Sheriff's badge! ... I'll tell you what, wait til [sic]

John Whetsel and—wait and see how much respect you guys got...."

3. Rule 1.3, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A providing:
"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

4. *State ex rel. Oklahoma Bar Ass'n v. Townsend*, see note 39, infra; *State ex rel. Oklahoma Bar Ass'n v. McCoy*, 2010 OK 67, ¶ 2, 240 P.3d 675; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, 2006 OK 23, ¶ 2, 136 P.3d 616.

5. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Zimmerman*, 2012 OK 35, ¶ 15, 276 P.3d 1022.

6. Rule 8.4, Rules Governing Professional Conduct, see note 2, supra.

7. Transcript of proceedings before the Trial Panel, April 26, 2012, Moon testifying in pertinent part at p. 148:
"... Q But if the Court finds that it is appropriate that you be publicly censured and

of $1,459.55. **The respondent should understand that if, during the the upcoming two years and one day, he violates any term or condition of the deferred suspension, the complainant has a duty to notify this Court of the breach. At that time, we will immediately consider a suspension of the attorney's license to practice law for a period of up to two years and one day.**

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Moon was admitted to the practice of law in April of 2004. On February 24, 2012, the Bar Association filed a three-count complaint asserting that the attorney had engaged in criminal acts, outside his professional dealings, adversely reflecting on the legal profession.

¶4 On the day of trial, the parties entered in joint stipulations of fact, conclusions of law, and a recommendation for discipline. As to each count, Moon acknowledged that he engaged in misconduct prohibited by Rule 8.4(b), Rules Governing Professional Conduct,[8] and Rule 1.3, Rules Governing Disciplinary Proceedings.[9] In its report, filed on June 14, 2012, the trial panel agreed with the stipulated violations and adopted the joint recommendation for discipline. It found that Moon should pay costs of the proceedings, be publicly censured, and placed on one year of probation during which time he would complete and abide by the following conditions: refrain from drinking alcohol or using any drug or medication not prescribed by his

physician; not violate any law or any term of his criminal probation; continue active involvement in the Lawyers Helping Lawyers Program; regularly attend and actively participate in Alcoholics Anonymous for the balance of his criminal probation and complete Valley Hope's Continuing Care Rehabilitation Treatment Program; not violate any professional or disciplinary rules; and comply with any condition this Court deems appropriate.

¶5 The Bar Association filed its brief in chief on July 9, 2012. The briefing cycle was completed on July 31, 2012 with the Bar Association's notice that it would waive the filing of a reply brief.

## JURISDICTION AND STANDARD OF REVIEW

¶6 It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law. The duty is vested solely in this department of government.[10] Our determinations are made *de novo*.[11] We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the finding of facts of the trial panel nor its view of the evidence or the credibility of witnesses binds this Court. The recommendation is merely advisory.[12] The same is true when the parties stipulate to misconduct and a recommendation for discipline.[13] Before this Court will discipline an

---

placed on probation and not suspended, is it your sworn testimony today that you are willing to waive all confidentiality with Lawyers Helping Lawyers, AA and your counseling through Valley Hope, outpatient, so that we can assure our court that we will monitor you carefully and if, at the least sign that you may have relapsed, that we will notify them and let them make the appropriate determination on what to do. If that your testimony?
A Yes, ma'am....''

8. Rule 8.4(b), Rules of Professional Conduct, see note 2, supra.

9. Rule 1.3, Rules Governing Disciplinary proceedings, see note 3, supra.

10. Title 5 O.S.2011 § 13; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶13, 867 P.2d

1279; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶4, 624 P.2d 1049.

11. *State ex rel. Oklahoma Bar Ass'n v. Combs*, 2008 OK 96, ¶11, 202 P.3d 830; *State ex rel. Oklahoma Bar Ass'n v. Pacenza*, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶17, 127 P.3d 600.

12. Rule 6.15, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 10–A; *State ex rel. Oklahoma Bar Ass'n v. Besly*, 2006 OK 18, ¶2, 136 P.3d 590; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, ¶2, 71 P.3d 18.

13. *State ex rel. Oklahoma Bar Ass'n v. Combs*, see note 11, supra; *State ex rel. Oklahoma Bar Ass'n v. Besly*, see note 12, supra; *State ex rel. Oklahoma Bar Ass'n v. McGee*, 2002 OK 32, ¶20, 48 P.3d 787.

errant attorney, misconduct must be demonstrated by clear and convincing evidence.[14] To make this determination, we must be presented with a record sufficient to permit an independent, on-the-record review for the crafting of appropriate discipline.[15] The record submitted is sufficient for this Court to make the required decisions.

### Count I—Warr Acres Arrest[16]

¶ 7 In the wee hours of September 12, 2008, an employee of the Whataburger Restaurant called in a complaint about an extremely intoxicated individual sitting in the restaurant's drive through. When an officer arrived on the scene and approached the running vehicle, Moon pulled out a badge and identification representing to the officer that he was an Oklahoma County Sheriff's Deputy [17] and told him that everything was "cool." The officer smelled alcohol on Moon whose speech was slurred and whose eyes were blood shot and watery. The attorney appeared to be extremely intoxicated.

¶ 8 When the officer asked Moon to turn off the vehicle, he refused. The attorney was asked if he had a firearm to which he responded by showing his badge and identifying himself as a deputy.[18] The officer ordered Moon not to drive off in the car and had to forcibly place the car in park and remove the keys. At this point, Moon continued to refuse to exit the vehicle. The officer placed the attorney under arrest and extricated the respondent from the car.[19] As they were approaching the officer's vehicle, Moon became verbally abusive and spit in the officer's face.

¶ 9 Exhibit 15, entered into the record, is a video recording of the booking process. The tape, which runs just short of two hours, reveals Moon: repeatedly demanding to be taken to Oklahoma County Jail; being uncooperative, abusive, belligerent, and offensive to officers; threatening the officers' jobs; indicating that all charges will be dropped because of the judges, district attorneys, city and state officials, and other influential people he knows; and asserting that he will be filing civil suits against the officers.

¶ 10 Moon doesn't dispute either that he spit on the officer or that he represented himself to be a police officer. However, he does not recall having done either but recognizes that he was "highly intoxicated at the

**14.** *State ex rel. Oklahoma Bar Ass'n v. Whitebook,* 2010 OK 72, ¶ 3, 242 P.3d 517; *State ex rel. Oklahoma Bar Ass'n v. Rogers,* 2006 OK 54, ¶ 9, 142 P.3d 428.

**15.** *State ex rel. Oklahoma Bar Ass'n v. Schraeder,* 2002 OK 51, ¶ 27, 51 P.3d 570; *State ex rel. Oklahoma Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627.

**16.** The complaint was initiated by the Warr Acres City Attorney on behalf of the Police Department. The facts as outlined are those stipulated to by the parties and those taken from testimony and the viewing of video recordings of each of the two arrests.

**17.** Although having many characteristics of an actual police officer's badge, the badge was actually an "eagle" badge presented to civilians in recognition of their support of the Oklahoma County Sheriff's Department. Transcript of proceedings before the Trial Panel, April 26, 2012, Moon testifying in pertinent part at 16:

"... Q ... Can you explain for the Trial Panel members what an Eagle badge is and how one gets one?
A An Eagle badge is from the Oklahoma County Sheriff's department. What it is, it goes to supporters of the sheriff's department.

It's a pretty exclusive group that's given personally by the sheriff's department for citizens that have gone beyond, I guess, the regular norm of supporting the Fraternal Order of Police and the sheriff's department in ways and helping with deputies and some of their legal needs and just supporting law enforcement in general.
Q Does that include support in the form of monetary contributions to the sheriff's campaign?
A Yes, ma'am.
Q And did you, in fact, make monetary donations to Sheriff Whetsel?
A Yes, ma'am, I sure have.
Q About how much, approximately?
A For the—to be in the Eagle's badge, it's $5,000 . . . ."

**18.** Although Moon stipulated to the facts surrounding the incident, he also indicated that he did not believe he identified himself as a police officer or that he intentionally spit on the officer. Nevertheless, he concedes that he was so intoxicated he really had no accurate memory of the incident.

**19.** A second attorney-passenger was arrested on charges of public intoxication and also transported to the police station.

time of the incident and thus, has no clear recollection of the events."[20]

¶ 11 On November 3, 2008, Moon was charged with two felonies, Placing Body Fluids Upon a Government Employee and False Personation of a Law Enforcement Officer and two misdemeanors, Actual Physical Control of a Motor Vehicle [while under the influence] and Resisting Arrest. Moon has tendered written formal apologies to the arresting officer, the Oklahoma County Sheriff, and his Department.

¶ 12 In November of 2011, Moon entered a negotiated agreement in which he pled guilty to the misdemeanor charges in exchange for dismissal of the felony counts. Pursuant to the plea, Moon received a two year deferred sentence on each count to be served under the supervision of the District Attorney's Office. He was also ordered to obtain a drug and alcohol assessment and to receive treatment as directed, including the completion of an outpatient treatment program for one year and to submit to random, monthly urinalysis testing.

### Count II—Wyoming Arrest

¶ 13 On December 24, 2008 at approximately 12:45 a.m., Sergeant Chett Hooper observed a set of vehicle tracks going off the right hand side of the road into a snowbank in rural Teton County, Wyoming. The sergeant followed tire tracks to Cattleman's Bridge discovering a vehicle stopped in the middle of the road with no lights. He approached the vehicle, the lights came on and the driver attempted to leave the scene. However, the sergeant was able to stop the vehicle which was driven by the respondent. Moon told the sergeant that he and his friend were sitting in the dark vehicle "watching moose" and that they had been driving into the snow banks intentionally.

¶ 14 Upon exiting the vehicle, the sergeant observed that Moon had slurred speech, red and watery eyes, swayed back and forth, and smelled strongly of alcohol. Moon admitted drinking about five beers and refused to submit to a breath test. He later declined the opportunity for a chemical test. Al-though Moon was cooperative during the arrest itself and at the station house thereafter, he again attempted to influence the way he was treated by name dropping and indicating that his father had been largely involved in the building of the local police facilities.

¶ 15 Moon was charged with Driving Under the Influence. On July 15, 2009, he entered a plea of guilty to the charge and was placed on two years unsupervised probation. He was also ordered: not to violate any law or consume or possess any alcoholic beverage; attend a state-certified DWUI class filing proof of completion thereof within four months; and to attend thirty-two (32) additional hours of substance abuse education or counseling and file proof thereof within 120 days. Moon has successfully completed all terms of the negotiated plea agreement.

### Count III—Oklahoma Traffic Accident

¶ 16 At 4:30 in the morning of February 20, 2011, Oklahoma Highway Patrol Trooper John Barnes responded to a report of a single car accident on the Kilpatrick Turnpike. The Trooper observed an unoccupied 2009 Ford Mustang with the top down and keys in the ignition. The vehicle was totaled and a loaded firearm was found in its console. The vehicle had struck the guardrail and a sign post, gone through a ditch, and landed off-road.

¶ 17 The Trooper traced the tag number and proceeded to the registered owner's home, observing a law enforcement vehicle parked in the driveway. The Trooper made contact with the Mustang's owner, a Captain in the Oklahoma County Sheriff's Department. The Captain told the Trooper that he had loaned the vehicle to Moon who called him at approximately 4:00 that morning stating he had wrecked the vehicle and that he was drunk.

¶ 18 The Captain took the Trooper to Moon's home and they entered through an unlocked door. They saw a number of gallon-sized liquor bottles in the house. Moon exited his bedroom, in the nude, and carrying

---

**20.** Exhibit 75, Joint Stipulations, pp. 8–9.

a firearm. He appeared intoxicated, denied having been in an accident, and went back to bed. The Trooper ordered Moon to get out of bed and get dressed and return to the living room to discuss the situation. The attorney asserted that his injuries were from an altercation with a girlfriend, was unsteady on his feet, had watery bloodshot eyes, and wreaked of alcohol. When the Trooper advised Moon he was under arrest, Moon begged the Captain for assistance stating that he was going to lose his law license. The Captain told the Trooper that he didn't want Moon in jail and asked if he could issue citations instead of making an arrest. The Trooper agreed issuing two citations, one for Operating a Motor Vehicle at a Speed Greater than Reasonable and Proper and one for Failure to Stop/Remain/at the Scene of an Accident Involving Property Damage.

¶ 19 The next day, Moon called the Trooper to thank him for only issuing tickets, promising to pay the citations and make restitution for the damage to the guard rails. Moon also indicated that he would help the Trooper out with legal work or make a donation to an organization on his behalf. Moon entered a plea of *nolo contendere* to the charges and paid both tickets and all court costs. Moon did not pay the $1,523.96 charge for repair of the Turnpike property. Rather, the Captain's insurance issued the check. Moon did reimburse the Captain $3,000.00 toward the purchase of a new 2011 Mustang.

### Stipulated Mitigation

¶ 20 The parties point to numerous factors they agree should weigh in favor of mitigation. They include the fact that the attorney: has not been previously disciplined; cooperated with the Bar Association throughout the disciplinary process; accepted responsibility for his behavior by entering guilty pleas and stipulations in this cause; recognizes that his actions brought discredit to the legal profession and is remorseful therefor; did not abuse the attorney-client relationship or harm any client's legal interest; suffered from chronic alcoholism; following his arrest in 2008, sought treatment in Florida and later returned to Valley Hope in 2011 where he finally accepted the fact that he was an alcoholic; currently attends a continuing care treatment program three times per week; is participating in Lawyers Helping Lawyers and has an assigned mentor to assist him in maintaining his sobriety and assist in his recovery; is committed to maintain his sobriety and submitted to random drug testing of hair follicles and urine with negative results; and is willing to submit to any terms deemed appropriate by this Court. In addition, we note that Moon's testimony indicates sincere remorse for his actions along with a true commitment to address his addiction problems.

¶ 21 **a. Clear and convincing evidence was presented of the attorney's having violated professional rules of conduct prohibiting: acts contrary to prescribed standards of conduct bringing disrepute upon the legal profession; criminal acts reflecting adversely on honesty, trustworthiness, and fitness to practice law; and any implication of an ability to influence improperly a government official.**

■ ¶ 22 It is inconsequential that there is no evidence that a client suffered as a result of the attorney's alcoholic encounters.[21] The record, transcript, and stipulations present clear and convincing evidence [22] of the attorney's misconduct arising from his use and abuse of alcohol.

¶ 23 The respondent's encounters with law enforcement violated standards set forth by

---

**21.** Rule 1.3, Rules Governing Disciplinary Proceedings, see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶ 27, 127 P.3d 600; *State ex rel. Oklahoma Bar Ass'n v. Foster*, 2000 OK 4, 995 P.2d 1138. Stipulations alone may be sufficient to provide clear and convincing evidence. *State ex rel. Oklahoma Bar Ass'n v. McBride*, see note 37, infra.

**22.** Rule 6.12, Rules Governing Disciplinary Proceedings, see note 5, supra; *State ex rel. Oklahoma Bar Ass'n v. Zimmerman*, see note 5, supra

the Oklahoma Rules Governing Professional Conduct and Disciplinary Proceedings. Specifically, Moon's acts discredited the legal profession in a most public fashion, with news clips of his ranting appearing on local news stations and on the world wide web.[23] The attorney brought disrepute on the legal profession by engaging in criminal conduct which not only brought into question his honesty and fitness to practice law but could have resulted in his or some innocent bystander's death. Finally, he invoked the names of respected members of the legal community in an attempt to avoid prosecution and gain favorable treatment.[24]

¶ 24 The trial panel found Moon's actions to have violated Rule 8.4(b), Rules Governing Professional Conduct, providing that it is misconduct to commit a criminal act reflecting adversely on a lawyer's honesty, trustworthiness or fitness as a lawyer. We agree and determine that clear and convincing evidence also exists of his having violated subsection (e) of the same rule, prohibiting an attorney's stating or implying an ability to influence improperly a government official.[25]

¶ 25 **b. The attorney's misconduct warrants public censure and a deferred suspension of two years and one day under conditions intended to assist the attorney in maintaining his sobriety and to protect the public. Cost of $1,459.55 are imposed.**

¶ 26 This Court determines the appropriate discipline to be administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Discipline is imposed to maintain these goals rather than as a punishment for the lawyer's misconduct.[26] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[27] Discipline is fashioned to coincide with the discipline imposed upon other lawyers for like acts of professional misconduct.[28] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis.[29]

¶ 27 Moon stipulated to the three alcohol-related offenses, covering a time period of approximately three years. However, it is clear that his issues with substance abuse have been problematic at least since 2001.[30]

---

23. Rule 1.3, Rules Governing Disciplinary Proceedings, see note 3, supra.

24. Rule 8, Rules Governing Professional Conduct, see note 2, supra.

25. *Id.*

26. *State ex rel. Oklahoma Bar Ass'n v. Townsend,* see note 39, infra; *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶ 21, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Bedford,* 1997 OK 83, ¶ 18, 956 P.2d 148.

27. *State ex rel. Oklahoma Bar Ass'n v. Pacenza,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Badger,* 1995 OK 113, ¶ 13, 912 P.2d 312; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975.

28. *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 16, 880 P.2d 339.

29. *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

30. Transcript of proceedings before the Trial Panel, April 26, 2012, Breanna Paquette, licensed professional counselor, testifying in pertinent part at p. 69:
"... Q Okay. One of the things, too, his [Moon's] records from Valley Hope, Have you had a chance to review his prior treatment?
A Yes, ma'am.
Q Okay. And so are you aware that in 2001, he [Moon] was treated at Cushing for substance abuse as well?
A Okay. I've not reviewed those records...."
Transcript of proceedings before the Trial Panel, April 26, 2012, Moon testifying in pertinent part: at pp. 138–39 "... Q I want to talk to you about a circumstance that was brought up by counsel for—I started to say the government. Counsel for the bar association. Concerning your stay at Valley Hope in 2001.
A Yes.
Q And is it true that you were there in that year, sir?
A Yes...."
at pp. 143–44 "... Q Mr. Moon, one of the—and I believe we got on this specific topic about your treatment in 2001, based on Exhibit 66, wherein your records from Valley Hope when you went inpatient last year and specifically on your intake, it was noted that you had been treated previously inpatient in 2001 for cocaine

It is also apparent that, although the Bar Association stipulated to Moon's cooperation during the disciplinary case, Moon either did not comply with all of the Bar Association's requests or did not do so in a timely manner.

¶ 28 The attorney did not appear at a meeting scheduled for March 29th, 2010 with a Bar Association employee. Apparently, at that time, Moon had complied with a request to take a urine test but had not submitted to an ordered hair follicle test.[31] Nevertheless, the record makes it clear that Moon successfully completed an in-patient program at Valley Hope and is currently attending all scheduled outpatient appoint-

ments along with being involved in both Lawyers Helping Lawyers and Alcoholics Anonymous. Also critical to our decision today is the fact that his counselor,[32] the Lawyer Helping Lawyers' coordinator,[33] the Oklahoma County District Attorney,[34] the Oklahoma County Public Defender,[35] and judges [36] before whom he practices indicated that they did not believe that he would present any danger to the public if allowed to continue the practice of law.

¶ 29 In similar causes involving attorneys with alcohol addiction problems, the breadth of discipline has run the gamut from our

---

abuse. You had a period of sobriety following your 2001 inpatient treatment, did you not?
A  Yes. Definitely.
Q  How many years were you able to maintain your sobriety?
A  It was right at almost two years...."

31. See, Exhibit 26, a letter dated April 22, 2010 from Loraine D. Farabow to Moon providing in pertinent part:

"... On March 29th, however, you failed to appear [at a scheduled meeting].... Mr. Anderson told us you were fully aware of the meeting we had scheduled, but would not be attending due to a matter you had scheduled with the Securities and Exchange Commission in Florida.
Mr. Anderson told us he would deliver your file to your new attorney and that, although you had complied with our request to take a urine test, you had not, to his knowledge, complied with our request to submit to a hair follicle test...."

32. Transcript of proceedings before the Trial Panel, April 26, 2012, Breanna Paqurette testifying in pertinent part at pp. 70–71:

"... Q  Okay. Based upon what you've observed of him since—actually since last October when he was doing the inpatient treatment as well as his outpatient program, have you witnessed or observed anything that would indicate to you that his practice of law would pose a danger to the public?
A  None whatsoever...."

33. Transcript of proceedings before the Trial Panel, April 26, 2012, Rebecca Williams testifying in pertinent part at pp. 79–80:

"... Q  Do you think L.B. Moon presents any sort of danger to the public through his law practice?
A  At this time, from my experience with him, I—I do not think so...."

34. Transcript of proceedings before the Trial Panel, April 26, 2012, David Prater testifying in pertinent part at p. 115:

"... Q  Do you have any reservations at all in him practicing law?
A  No, I'm not concerned about that at all. I know of no adverse effect that they had on any of his clients...."

35. Transcript of proceedings before the Trial Panel, April 26, 2012, Robert Ravitz testifying in pertinent part at p. 101:

"... Q  Mr. Ravitz, based upon your particular knowledge of Mr. Moon's practice of law and his abilities, as well as his personal life and choices that he's making at this time, is there anything that would give you concern for him to have—to continue practicing law?
A  Absolutely not. I think that Mr. Moon realizes the mistake he made. I think he knows how important it is to adequately represent people and I think he knows how important it is not to indulge in alcohol...."

36. Transcript of proceedings before the Trial Panel, April 26, 2012, Honorable Ray C. Elliott testifying in pertinent part at p. 92:

"... Q  Is there anything, based on the rumor mill at the courthouse that would give you any pause for concern for him [Moon] to maintain his law license?
A  If he has indeed undertaken the treatment, that it's my understanding that he has, no, I would have no—no qualm in recommending that, no...."
Transcript of proceedings before the Trial Panel, April 26, 2012, Honorable Jerry D. Bass testifying in pertinent part at p. 104–05:
"... Q  Do you have any reservation at all, sir, in recommending to the Supreme Court that he be allowed to practice law?
A  From what I know, from my previous experience with him and—and my contact with him recently, I would not hesitate, based on the, you know, misjudgment that he had in—in the past. I would not. I believe he's—to me,

refusal to impose any discipline to disbarment.[37] At the hearing before the Trial Panel, the Bar Association stated that Moon's situation closely paralleled the facts of *State ex rel. Oklahoma Bar Ass'n v. McBride*, 2007 OK 91, 175 P.3d 379. We agree.

¶30 In a period of three years, Moon was arrested twice for drunken driving. On one such occasion, he allegedly spit on the arresting officer. The respondent was filmed while he harangued, castigated, berated, and threatened the officers responsible for his booking for a period of almost two hours. A portion of the recording of the incident appeared on local news and is now readily available for viewing on the world wide web. On a third occasion, Moon left the scene of an accident and was so intoxicated when he was approached at his home concerning the matter that he appeared in the nude before a Trooper and another officer while toting a firearm. There is evidence that Moon's problems with substance abuse stretch back to 2001. It is also readily apparent that the attorney understood that his transgressions placed his license to practice law in danger of being revoked, as during both the second arrest and the incident where he left the scene, he begged the officers involved to do something other than arrest him because he feared the loss of his license to practice.

¶31 *McBride* is factually very similar to the instant cause. There, the attorney was twice convicted of misdemeanor charges of driving under the influence. Like Moon here, the evidence presented regarding McBride's legal expertise supported a finding that he was a good lawyer who always acted professionally and appropriately while practicing law. McBride had also been struggling with addiction issues for approximately ten years as has Moon. Similar to McBride, Moon has: admitted his addiction and stipulated to his transgressions; sought help; received good reports on his treatment and participation in the outpatient program, Alcoholics Anonymous, and Lawyers Helping Lawyers; agreed to waive confidentiality so that any breach of the conditions imposed could be readily reported; expressed his remorse and embarrassment; and been candid with the Bar Association and the Trial Panel.

¶32 Both plea bargains negotiated in the criminal proceedings contained probationary periods of two years. Curiously, despite those pleas and the reliance upon and the uncanny resemblance with the facts of *McBride*, neither the parties nor the trial panel recommended that Moon receive discipline consonant with that imposed in the previous cause. McBride was publicly censured and received a deferred suspension of two years and one day, with conditions similar to those recommended here. Nevertheless, it has been proposed that Moon receive only one year's probation with conditions along with the payment of costs.

¶33 As is appropriate, we take into consideration the mitigating circumstances stipulated to by the parties in crafting the

it appears to me that he has learned a great lesson in life...."

37. *State ex rel. Oklahoma Bar Ass'n v. McBride*, 2007 OK 91, 175 P.3d 379 [Suspension of two years and one day with conditions for good lawyer with no misconduct related to representation of clients but having two prior arrests for driving under the influence.]; *State ex rel. Oklahoma Bar Ass'n v. Rogers*, see note 14, supra [Numerous alcohol-related felony and misdemeanor charges warranted attorney's suspension for two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, 142 P.3d 410 [Attorney with history of driving while under the influence and who had multiple violations of rules of conduct suspended for two years and one day.]; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, see note 21, supra [Public censure and one-year probation for attorney arrested for felonious sexual battery while intoxicated]; *State ex rel. Oklahoma Bar Ass'n v. Giger*, 2001 OK 96, 37 P.3d 856 [Six arrests for drug-related vehicular crimes and inadequate representation of clients warranted suspension for one year and conditioned supervision for two years.]; *State ex rel. Oklahoma Bar Ass'n v. Wyatt*, 2001 OK 70, 32 P.3d 858 [Attorney disbarred after conviction for manslaughter based on death while attorney was driving under the influence after a prior drunk driving conviction.]; *State ex rel. Oklahoma Bar Ass'n v. Doris*, see note 29, supra [Three convictions for driving under influence, intentionally appropriating client funds, and remittance of funds only upon filing of grievance supported disbarment.]; *State ex rel. Oklahoma Bar Ass'n v. Hogue*, 1995 OK 64, 898 P.2d 153 [Suspension of six months for making a false statement under oath, failing a drug test, and driving under the influence while transporting an open container.]; *State ex rel. Oklahoma Bar Ass'n v. Armstrong*, 1992 OK 79, 848 P.2d 538 [No discipline imposed where attorney, after having been twice convicted of driv-

appropriate quantum of discipline for Moon's transgressions.[38] The attorney has repeatedly and sincerely expressed remorse for his actions. Considering the respondent's misconduct, discipline imposed in a like cause and in the associated criminal proceedings, and the mitigating circumstances, we determine that the attorney should be disciplined by public reprimand and a deferred suspension period of two years and one day, with conditions intended to assist in and encourage continued sobriety.

¶ 34 The attorney recognizes his responsibility to pay the fees and expenses of the investigation. The Bar Association filed a motion to assess costs of $1,459.55, an amount to which Moon has agreed.[39] Therefore, the attorney is ordered to pay the agreed amount within ninety (90) days after the effective day of this opinion to avoid automatic suspension from the practice of law.[40]

## CONCLUSION

¶ 35 A conviction for driving a motor vehicle while under the influence of intoxicating liquor does not facially show a lawyer's unfitness to practice law.[41] Nevertheless, a pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to an attorney's legal obligations.[42] As we have done previously in a similar cause, we publicly censure the attorney and impose a deferred suspension period of two years and one day. During the period of suspension, the attorney shall: refrain from any and all use of alcohol or mind-altering substances; not partake of any illegal drugs; maintain participation in Alcoholics Anonymous, attending weekly meetings; sign and comply with conditions of a contract with Lawyers Helping Lawyers; complete any outpatient treatment program in which he is currently enrolled; waive all questions of confidentiality permitting notification to the General Counsel of the Oklahoma Bar Association of any default in the terms of probation or deferred suspension;[43] and pay costs of $1,459.55.

¶ 36 At the end of the two years and one day probationary period, if Moon has not violated the terms of the probation, the suspension will be dismissed. Nevertheless, we emphasize that, if the General Counsel receives information that the attorney has violated any term or condition of his probation,

ing under the influence, had been sober for over six years.].

**38.** *State ex rel. Oklahoma Bar Ass'n v. McCoy,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, ¶ 20, 777 P.2d 920.

**39.** Complainant's Exhibit G, dated May 22, 2012, and attached to the Application to Assess Costs filed on June 14, 2012. Included in that figure is a transcript expense of $1,053.50, for an original and two certified copies. We note that Rule 6.16, Rules Governing Disciplinary Proceedings, see note 40, infra, does not specifically limit recovery of transcript expenses in disciplinary proceedings to an original and one copy as does Rule 11.1(c), 5 O.S.2011, Ch. 1, App. 1–A, in reinstatement proceedings. *State ex rel. Oklahoma Bar Ass'n v. Townsend,* 2012 OK 44, ¶ 35, 277 P.3d 1269; *Reinstatement of Moss,* 1993 OK 16, ¶ 6, 848 P.2d 564. Nevertheless, Rule 6.16 does allow remittance of costs for good cause shown. Here, Moon specifically agreed to pay an amount representing the cost of an original transcript and two copies. See, Respondent's Brief in Chief, filed on July 23, 2012, p. 2. Admissions in a brief may be regarded as a supplement to the appellate record. *Oklahoma Corrections Professional Ass'n, Inc. v. Jackson,* 2012 OK 53, fn. 6, 280 P.3d 959; *Woods v. Prestwick House, Inc.,* 2011 OK 9, fn. 16, 247

P.3d 1183; *White v. Heng Ly Lim,* 2009 OK 79, fn. 10, 224 P.3d 679.

**40.** Rule 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A, providing: "The costs of investigation, the record, and disciplinary proceedings, shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

**41.** *State ex rel. Oklahoma Bar Ass'n v. Rogers,* see note 14, supra; *State ex rel. Oklahoma Bar Ass'n v. Armstrong,* see note 37, supra; *State ex rel. Oklahoma Bar Ass'n v. Doris,* see note 29, supra.

**42.** *State ex rel. Oklahoma Bar Ass'n v. Rogers,* see note 14, supra; *State ex rel. Oklahoma Bar Ass'n v. Doris,* see note 29, supra.

**43.** See note 7, supra.

the General Counsel shall immediately notify the Court so that suspension of up to two years and one day may be imposed, to commence on a date this Court deems appropriate.

**DISCIPLINED BY PUBLIC REPRIMAND, DEFERRED SUSPENSION OF TWO YEARS AND ONE DAY SUBJECT TO TERMS, AND COSTS IMPOSED.**

COLBERT, V.C.J., WATT, WINCHESTER, EDMONDSON, REIF, JJ., concur.

KAUGER, J., concurs in part; dissents in part.

TAYLOR, C.J., COMBS, GURICH, JJ., dissent.

TAYLOR, C.J., with whom KAUGER, COMBS, GURICH, JJ. join, dissenting:

Due to his history with alcohol, guns, lying and outrageous behavior and in order to protect the public and uphold the standards of the legal profession, I would immediately suspend this Respondent from the practice of law.