OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. JOHNSON

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. JOHNSON
2024 OK 62
Case Number: SCBD-7583
Decided: 09/10/2024
THE SUPREME COURT OF THE STATE OF OKLAHOMA

Cite as: 2024 OK 62, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,
v.
DAVID EARL JOHNSON, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 The Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged the Respondent, David Earl Johnson, with seven counts of professional misconduct pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings. The Professional Responsibility Tribunal held a hearing and recommended the Respondent be suspended from the practice of law for two years. We hold there is clear and convincing evidence that the totality of the Respondent's conduct warrants a suspension of his law license for a period of two years and one day. The Respondent is hereby suspended from the practice of law for a period of two years and one day year from the date of this opinion and ordered to pay costs as provided herein.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR 
TWO YEARS AND ONE DAY; ORDERED TO PAY COSTS

Katherine Ogden, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

David Earl Johnson, pro se.

COMBS, J.:

¶1 On November 16, 2023, the Complainant, State of Oklahoma ex rel. Oklahoma Bar Association (Complainant), began proceedings pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2021, Ch. 1, App. 1-A, claiming the Respondent, David Earl Johnson (Respondent), has committed certain acts which constitute professional misconduct in violation of the RGDP, Rules 1.3[1] (discredit to the profession) and 5.2[2] (failure to respond to a grievance) and the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2021, Ch. 1, App. 3-A, Rules 1.3[3] (diligence), 1.4[4] (communication), 1.5[5] (reasonableness of fee), 1.5(c)[6] (contingency fee agreements), 1.15 (safekeeping of property), 3.2[7] (expediting litigation), and 8.4 (d)[8] (prejudice to the administration of justice). The Complainant recommends the Respondent be suspended from the practice of law for two years and one day and pay assessed costs.

I. FACTS AND PROCEDURAL HISTORY

¶2 The Respondent is an active member of the OBA in good standing. He was admitted to practice law in the State of Oklahoma on June 26, 2017. From May 24, 2021, through May 31, 2023, the Complainant received seven grievances against the Respondent. The complaint consisted of seven counts alleging various rule violations mentioned above. It was sent by certified mail to the Respondent's official roster address on October 26, 2023, which was returned "unclaimed" on November 27, 2023. The OBA Investigator contacted the Respondent and obtained a new address. The Complainant attempted to serve the Respondent by certified mail and private process server at this new address but was unsuccessful. On November 14, 2023, the Complainant hired the Cherokee County Sheriff's Office to locate and personally serve the Respondent. The sheriff ultimately served the Respondent at the new address on December 20, 2023, after several attempts were made. The Respondent failed to file a responsive pleading as required by Rule 6.4, RGDP.[9]

¶4 On January 9, 2024, the PRT held a one-day hearing. The Complainant presented nine witnesses and numerous exhibits. The Respondent attended pro se and testified but presented no witnesses or exhibits. Several grievance exhibits were objected to by the Respondent as hearsay because the declarants were unavailable.[10] The presiding master of the PRT ruled those exhibits were inadmissible and they did not fall under the business record exception to the hearsay rule.[11] Because the Respondent failed to respond to the Complaint, the Complainant moved to have all allegations in the Complaint deemed admitted pursuant to Rule 6.4, RGDP ("In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed."). After a brief discussion, the presiding master denied the motion. She found no benefit to deeming the allegations admitted when the Complainant must still put on all its evidence anyway.[12]

¶5 The PRT filed its report and its application to assess costs on February 6, 2024, and an amended report on February 14, 2024. The amended report found the Respondent's conduct exhibited a pattern of neglecting his clients and failing to perform legal work to the clients' detriment. It determined he violated the following rules: 1.3 (diligence), 1.4 (communication), 1.5 (reasonableness of fee), 1.5(c) (contingency fee agreements), 3.2 (expediting litigation), and 8.4(d) (prejudice to the administration of justice), ORPC, and 5.2 (failure to respond to a grievance), RGDP; the report did not find the Respondent violated rules 1.15 (safekeeping of property), ORPC and 1.3 (discredit to the profession), RGDP. The PRT recommended the Respondent be suspended from the practice of law for two years.

¶6 The Complainant filed its brief on March 4, 2024. The Complainant also requested this Court determine the presiding master erred in denying their motion to deem the allegations admitted pursuant to Rule 6.4, RGDP. The Complainant recommended the Respondent be suspended from the practice of law for two years and one day.

¶7 The Respondent filed his brief on March 19, 2024. He admits he did not file an answer to the Complaint but that he attended the hearing and challenged the competency of some of the evidence presented. He asserted that "[p]ermitting an attorney facing discipline to be disciplined only for those allegations supported by competent evidence safeguards essential principles of due process." He concluded by stating "[e]xcept as to certain facts noted specifically above about Counts II [Donna Leroy] and III [Patrick Colvin/Terry Noble], Respondent does not disagree that he failed to provide these clients with the representation they deserved." In all cases, he acknowledges that he "owed his clients better communication." He requested this Court to only impose the two year suspension recommended by the PRT.

II. STANDARD OF REVIEW

¶8 In Bar disciplinary proceedings, this Court possesses exclusive original jurisdiction. State of Oklahoma ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, ¶ 10, 895 P.2d 707, 711. Our review of the evidence is de novo in determining if the Bar proved its allegations of misconduct by clear and convincing evidence. State of Oklahoma ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 7, 23 P.3d 268, 272. Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish the offending lawyers. State of Oklahoma ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶ 15, 212 P.3d 1186, 1192. Neither the trial authority's findings nor its assessments of the weight or credibility of the evidence bind this Court. State of Oklahoma ex rel. Okla. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 8, 914 P.2d 644, 648.

III. ANALYSIS

A. Motion to Deem the Factual Allegations Admitted

¶9 Pursuant to Rule 6.4, RGDP, the Complainant moved to have the factual allegations deemed admitted due to the Respondent's failure to file a responsive pleading to the Complaint. When a respondent fails to answer a complaint, the charges shall be deemed admitted, except evidence shall be submitted for the purpose of determining the discipline to be imposed. Rule 6.4, RGDP. Even when the charges are deemed admitted, this Court will impose discipline only upon finding that clear and convincing evidence demonstrating the misconduct was presented. State of Okla. ex rel. Okla. Bar Ass'n v. Clark, 2023 OK 27, ¶ 10, 527 P.3d 708, 712. Clear and convincing evidence is that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. Id. In order to meet its burden of proof, the Complainant generally solicits testimony at the hearing before the PRT or includes documentary evidence in the record. State ex rel. Okla. Bar Ass'n v. Wilcox, 2009 OK 81, ¶4, 227 P.3d 642, 647.

¶10 The presiding master determined it was of no benefit to deem the factual allegations admitted because the Complainant must still present clear and convincing evidence to support its allegations for purposes of discipline. In Clark we held that although evidence must still be submitted for the purpose of determining discipline, the language of the rule is not discretionary when evidence supports a respondent failed to answer the complaint. Id. Here the evidence as well as the Respondent's own testimony shows no responsive pleading to the Complaint was ever filed. We therefore hold the presiding master erred in its decision to not grant the Complainant's motion and we now grant the motion to deem the allegations admitted. However, the Complainant must still present admissible clear and convincing evidence to support its allegations for the purpose of determining discipline.

B. 1. COUNT I of the Complaint (Chaffin Grievance)

¶11 In May 2018, Mary Ann Chaffin was injured in a slip and fall accident in Owasso, OK. The Respondent is married to the daughter of Chaffin's stepdaughter, and he contacted her while she was recovering in a facility. He offered to provide her legal representation on a 10% contingency fee basis, however, no contract was ever provided to Chaffin. Over the course of 12 to 13 months Chaffin gathered her medical bills and sent them to the Respondent. On May 19, 2020, the Respondent filed a petition. She testified that after he filed the petition his communication with her was mostly absent. She would only hear from him about every 5 or 6 months. After not hearing from the Respondent, Chaffin conducted her own research on the internet. On April 8, 2021, she discovered that the opposing counsel had filed discovery requests that were unanswered and had also filed a motion to dismiss on March 16, 2021. She immediately contacted the Respondent, but he did not return her call for weeks. In the meantime, on April 27, 2021, the court dismissed her case. Chaffin thereafter contacted opposing counsel who informed her that he could not give her advice but encouraged her to contact the court. She wrote the court stating she did not want her case to be dismissed. The Respondent did not file a response to the motion to dismiss but did file a motion to vacate the dismissal on May 27, 2021. On September 22, 2021, the court vacated the dismissal and the court's order warned the Respondent that failure to respond to future deadlines would subject the case to sanctions including dismissal. Mark Smiling, the attorney representing the defendant's insurance carrier, also testified that the Respondent did not file anything including any responses to his discovery requests after the court vacated the order dismissing the case. A second motion to dismiss was therefore filed on January 14, 2022, which was granted on September 9, 2022. The Respondent did not file a motion to vacate that order and Chaffin's negligence cause of action is now permanently barred. She is out of pocket approximately $14,000.00 in medical bills.

¶12 The Respondent testified that he felt particularly bad about Chaffin's case and that he "did not do right by her." The Complainant alleges it proved by clear and convincing evidence that the Respondent's actions violated Rules 1.3, 1.4, 1.5(c), 3.2 and 8.4(d), ORPC and Rule 1.3, RGDP.

2. COUNT II of the Complaint (Leroy Grievance)

¶13 On February 7, 2020, Donna Leroy signed a flat fee agreement and paid the Respondent $2,000.00 to handle her mother's probate. Leroy testified that the Respondent indicated to her the process would take between 30-60 days. Leroy provided the Respondent the necessary documentation and he filed a petition for probate of the will on June 15, 2020. Leroy attended the July 8, 2020, hearing admitting the will to probate and appointing her personal representative. She testified that the Respondent would not return her calls and in October 2020 she went to his office and left a note on his door asking whether she needed to finish the probate herself and what she needed to do. Thereafter, her brother called the Respondent pretending to be a new client and had no trouble speaking to the Respondent. The record reflects that the Respondent then filed a notice to creditors on November 9, 2020, but did not publish the same. Nothing was done on the case after this filing and Leroy went to the courthouse to find out what was happening in the case. She testified the judge's secretary tried to call the Respondent but his phone number was no longer in service. She was advised to hire a new attorney and she claims she immediately left the courthouse and hired Clayton Baker on March 22, 2021. She paid him $1,000.00 to complete her mother's probate. Baker filed an alias notice to creditors on March 29, 2021, and the affidavit of publication was filed on April 21, 2021. A hearing was held and an order allowing final account was entered on July 6, 2021.

¶14 On cross-examination the Respondent inquired about alleged threats he received from Leroy. Leroy denied she threatened the Respondent but did admit she said something like "you don't want to know who my brother works for" and made such a statement because the Respondent was "dragging [his] butt" and not doing his job. Clayton Baker also testified that the probate case was only half complete when he received it and the case was not complicated. He believed the case should have already been finalized sometime in February 2021. On cross examination the Respondent implied that the newspaper publisher used in that part of the state did not publish during parts of 2020, but Baker had no knowledge of that.

¶15 Leroy filed a grievance with the OBA on June 21, 2021. The Respondent filed a response letter on July 16, 2021 and refuted Leroy's characterization of events. He first asserted that he never told Leroy her case would be over in 30-60 days but that an initial hearing might occur during that time. He asserted that finding a newspaper to publish the notice was difficult and he finally was able to get into contact with one in November 2020. He claims to have contracted Covid-19 and went through several weeks of "convalescence" in November but does not explain why he did not go ahead and publish the notice. He also claims his phone number had not been disconnected and he did not receive a call from the courthouse. He indicated he received a call on January 25, 2021, February 24, 2021, and March 16, 2021, from Leroy. Although he claims to have been in court on several of those calls, he did not provide an explanation as to why he did not return her calls. He claims the March 16th phone call was the one threatening him. In his response letter, the Respondent offered to return $400 of Leroy's money but, by the time of the January 9, 2024, PRT hearing, he had not done so.

¶16 The Complainant alleges it proved by clear and convincing evidence that the Respondent's actions violated Rules 1.3, 1.4, and 1.5, ORPC and Rule 1.3, RGDP.

3. COUNT III of the Complaint (Colvin Grievance)

¶17 Patrick Colvin currently represents the Respondent's former client, Terry Noble, in a lawsuit in Cherokee County, Oklahoma as well as an appeal of a judgment and order in that case and a negligence suit against the Respondent. Colvin filed the grievance in Count III of the Complaint. Noble is a property developer and was sued in September 2021 by some of the homeowners in one of his developments concerning access rights. Noble hired the Respondent to represent him in the lawsuit and, in addition, to help him with setting up a new collective maintenance agreement/covenants related to the property as well as website. He paid the Respondent $1,500.00. The Respondent answered the petition in September 2021 and thereafter Noble had difficulty getting into contact with the Respondent. His main contact was via text messages. Noble testified that he thought nothing was going on with the lawsuit but he needed his file to perform work related to an accounting on the maintenance issues. His text messages and voicemail records in January 2022 reflect what he needed and asked the Respondent to make available the maintenance paperwork. He repeatedly asked the Respondent for his help on the issue but received no help. Noble went to the Respondent's office several times and eventually left a note when he could not find him. The note said "David I need my stuff, Terry." Thereafter, he was allowed into the Respondent's office by a co-tenant and the Respondent took his file.

¶18 On April 4, 2022, the plaintiffs in the property lawsuit filed a motion for summary judgment. A certificate of mailing was mailed to the same address the Respondent used in his answer to the petition. The Respondent did not file a response or notify Noble of the motion and a judgment was entered against Noble on May 12, 2022. The judgment was for $75,000.00 actual damages, $50,000.00 punitive damages, and $25,000.00 in attorney fees. It also altered Noble's access to his property. Noble claimed he first learned of the judgment when the sheriff served him with an order to appear and answer for assets on June 20, 2022. His bank account was also garnished in the amount of $32,000.00.

¶19 Noble thereafter hired Patrick Colvin to represent him and to file a petition to vacate. A verified petition to vacate was filed on July 25, 2022. The Respondent provided Colvin a declaration to attach to the petition wherein the Respondent claims he believed Noble had found other counsel, but that Respondent was at "fault alone." However, the Respondent did not withdraw from the case. The court denied the petition on October 11, 2023, and the order stated the negligence of Noble's previous counsel is imputed to him, and Noble's communication and dealings with previous counsel amounted to contributory negligence that supported a finding of lack of unavoidable casualty. Noble has appealed this order and the judgment.

¶20 The Complainant alleges it proved by clear and convincing evidence that the Respondent's actions violated Rules 1.3, 1.4, and 8.4(d) ORPC and Rule 1.3, RGDP.

4. COUNTS IV-VI of the Complaint (Wheeler, Thiel and Maupin Grievances)

¶21 Three grievances, Counts IV-VI, of the Complaint were filed by Jeanne Simons Wheeler, Harlianne Thiel, and Jackie Maupin, respectively. None of them appeared to testify to support their grievances and therefore the Respondent objected to the admission of these three grievances based on hearsay. The presiding master sustained the objection and did not admit the three grievances. All three counts included a claim of a Rule 5.2, RGDP violation. In fact, Counts V and VI (Thiel and Maupin grievances) only included a violation of this rule because the Complainant did not find they otherwise contained merit. Rule 5.2, RGDP, provides that the "failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline."

¶22 The Complainant presented exhibits of letters requesting a response to the three grievances as well as the testimony of the OBA Investigator, Brian Martin. The Respondent did not respond to multiple requests for a response. The Complainant subpoenaed the Respondent for his deposition on the Wheeler and Thiel grievances. The Respondent attended the deposition on April 5, 2023, but did not bring the requested files. Following the deposition, he provided a response to the Wheeler grievance. The Complainant's brief states the Respondent supplied a response to the Thiel grievance after the deposition. The Respondent testified he did not timely respond to the Maupin or Thiel grievance.

¶23 In addition to the Rule 5.2, RGDP violation, the Complainant alleges that the Respondent violated Rules 1.3, 1.4, 1.5, 1.15 and 8.4(d), ORPC and Rule 1.3, RGDP, in connection to the Wheeler grievance. Although, the grievance itself was not admitted into evidence, the Respondent's response to the grievance and text messages between the Respondent and Wheeler were admitted. Through testimony and the admitted exhibits it was established that in September 2022 the Respondent was paid $900 to represent Wheeler in a divorce action. In November 2022, Wheeler texted him several times asking for any update and requesting a refund if he was not going to file her case. On April 5, 2023, the date of the deposition, the Respondent finally texted Wheeler apologizing for his "lack of communication" and telling her she deserved "better representation and better communication, and [he] did not give those things to [her]." On June 20, 2023, Wheeler told him to file the "papers asap . . . I need it done . . . he scares me A lot." The Respondent texted her back on the same day and said he would file the papers and would prepare a temporary order "to get some protection in place." In his April 7, 2023, untimely response to the Wheeler grievance, the Respondent informs the Complainant that he was committed "to doing whatever is necessary to make it right with her." At the January 9, 2024, PRT hearing the Respondent testified that he still had Wheeler's $900.00 in his trust account and had not filed a petition in her case. He also testified that he called Wheeler on January 8, 2024, the day before the PRT hearing, to try to make things right with her.

5. COUNT VII of the Complaint (Webb Grievance)

¶24 On March 23, 2021, Naomi Webb hired the Respondent to finish the probate of her father-in-law which had been started in 2002. She paid the Respondent $700.00 to begin work on the probate. Webb explained to the Respondent the importance of getting the will probated. Her brother-in-law was living in a house that was owned by the father-in-law and he has the mental capacity of a child. Further, Webb's husband is deceased and the insurance on the property was in his name. Her primary concern was to obtain adequate provision for her brother-in-law.

¶25 Webb testified she had difficulty reaching the Respondent and in July 2022, she sent him a dismissal letter. The Respondent called her on August 2, 2022, after receiving her letter. He told her he had done nothing on her case and had no excuse. He also said he would finish her case at his expense even though Webb did not ask him to do that. Thereafter, the Respondent did not do anything on the case. Webb said she had sent the Respondent phone messages and text messages but heard from him only once when he informed her that he was in court and would call her back. She never heard from him. On May 24, 2023, she filed a grievance with the OBA. She also hired a new attorney on July 12, 2023, Kathryn Morton Wood, to finish her probate. Wood testified that she was able to obtain the original probate file without problem and she began helping Webb to complete the probate. She also testified that a review of the docket showed the last activity in the case was in 2002 and the Respondent never filed an entry of appearance.

¶26 The OBA Investigator testified that the Respondent did not file a response to the Webb grievance, nor any other grievance filed after the April 5, 2023, deposition of the Respondent, i.e., the Maupin and Webb grievances. The Respondent also testified that he did not timely file a response to the Webb grievance. The Respondent was asked whether he had returned Webb's $700.00 payment and he testified he had not and the amount was in his trust account. On cross examination the Respondent asked Webb that if he returned her money would she still pursue her grievance and she replied yes because she did not want him to do the same thing to another person.

¶27 The Complainant alleges it proved by clear and convincing evidence that the Respondent's actions violated Rules 1.3, 1.4, 1.5, and 8.4(d) ORPC and Rule 1.3, and 5.2 RGDP.

C. Rule Violations

¶28 The Complainant's burden is to prove its allegations of misconduct by clear and convincing evidence. Here, we find the Complainant has proven by clear and convincing evidence that the Respondent violated Rules 1.3, 1.4, 1.5, 1.5(c), and 3.2 ORPC, and Rules 1.3 and 5.2, RGDP. We do not find the Complainant has proven by clear and convincing evidence that the Respondent violated Rule 1.15, ORPC. This lengthy rule concerns the safe keeping of clients' property and attorney trust accounts. The only alleged violation of this rule occurred in Count IV (Wheeler grievance) where evidence was limited due to the grievance not being admitted. The Complainant's brief does not delineate what portion of the rule has been violated or what actions of the Respondent would constitute a violation of this rule.

¶29 The record shows a pattern of the Respondent failing to communicate and provide diligent representation to his clients in violation of Rules 1.3 and 1.4, ORPC. The Respondent has also repeatedly collected an attorney fee from his clients and failed to either perform any work or complete the work for which he was hired. Rule 1.5, ORPC, prohibits a lawyer from charging an unreasonable fee. We have held this rule is violated when a lawyer collects an attorney fee but fails to perform any work. State ex. rel. Okla. Bar Ass'n v. Clark, 2023 OK 27, ¶47, 527 P.3d 708, 718; State ex. rel. Okla. Bar Ass'n v. Sheridan, 2003 OK 80, 84 P.3d 710. We hold the Complainant has proven by clear and convincing evidence the Respondent violated Rules 1.3, 1.4 and 1.5, ORPC.

¶30 Rule 1.5(c), ORPC, requires a contingent fee agreement to be in writing and signed by the client. In Count I (Chaffin grievance) the Respondent represented Chaffin on a contingency fee basis without a written contract. In addition, Rule 3.2, ORPC requires a lawyer to make reasonable efforts to expedite litigation consistent with the interests of the client. The Complainant alleged the Respondent violated Rule 3.2, ORPC by his failure to expedite Chaffin's negligence litigation which ultimately caused her to be barred from recovery. We hold the Complainant has proven by clear and convincing evidence the Respondent violated Rule 1.5(c) and 3.2, ORPC.

¶31 It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. Rule 8.4(d), ORPC. This rule concerns serious interference with the administration of justice. State ex rel. Okla. Bar Ass'n v. Bourne, 1994 OK 78, ¶8, 880 P.2d 360, 362. We have held the interference must include some element of deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct. State ex rel. Okla. Bar Ass'n v. Bailey, 2023 OK 34, ¶140, 530 P.3d 24, 59; State ex rel. Okla. Bar Ass'n v. Minter, 2001 OK 69, ¶24, 37 P.3d 763, 775. The Complainant alleged in Counts I (Chaffin grievance), III (Colvin grievance), IV (Wheeler grievance), and VII (Webb grievance) that the Respondent's actions violated Rule 8.4(d). However, its brief omits any mention of Rule 8.4(d) when discussing discipline and does not provide argument to support how the Respondent violated this rule. Therefore, we hold the Complainant has not met its burden of proof by clear and convincing evidence that the Respondent violated Rule 8.4(d).

¶32 In Counts IV-VII of the Complaint (Wheeler, Thiel, Maupin, and Webb grievances) the Complainant alleged the Respondent failed to timely respond to these bar grievances. After he failed to respond to the Wheeler and Thiel grievances the Complainant deposed the Respondent on April 5, 2023. After the deposition, he untimely responded to the Wheeler grievance and, according to the Complainant's brief, he also filed a response to the Thiel grievance. There is no evidence he ever filed a response to the Maupin and Webb grievances which were filed after the deposition. Failure of a lawyer to answer within twenty days after service of the grievance, or such further time as may be granted by the General Counsel, shall be grounds for discipline. Rule 5.2, RGDP. In State ex rel. Okla. Bar Ass'n v. McCoy, 2010 OK 67, ¶33, 240 P.3d 675, 686, we determined that failure of a lawyer to respond to the OBA's investigative inquiries is a serious offense which causes utilization of greater resources and creates substantial delays in addressing complaints of clients who have already suffered the lawyer's procrastination. We hold the Complainant has proven by clear and convincing evidence the Respondent violated Rule 5.2, RGDP.

¶33 The Complainant also alleged the Respondent violated Rule 1.3, RGDP. This rule provides that any act of a lawyer, whether in the course of their professional capacity or otherwise, that is contrary to prescribed standards of conduct and that would reasonably be found to bring discredit upon the legal profession, is grounds for discipline. We have determined the Respondent has violated many rules of professional conduct and disciplinary proceedings. To the extent his conduct constitutes a violation of these aforementioned rules, it also constitutes a violation of Rule 1.3, RGPD. See State ex. rel. Okla. Bar Ass'n v. Clark, 2023 OK 27, ¶51, 527 P.3d 708, 719.

D. Mitigating Circumstances

¶34 Mitigating circumstances may be considered when assessing the appropriate quantum of discipline. McCoy, 2010 OK 67, ¶25, 240 P.3d at 684. The Respondent did not answer the complaint but did file an answer brief to the Complainant's brief-in-chief. With few exceptions, his answer brief did not dispute the factual allegations made by the Complainant and he acknowledged he owed all the clients better communication and representation. He believed he was fired by his client Noble and alleged the Complainant left out facts concerning his representation of Leroy, i.e., her representation occurred during the Covid-19 period and she made implied threats to him.

¶35 The Respondent attended the PRT hearing and offered testimony for purposes of mitigation and explanation but wanted to make clear he did not believe it excused his conduct. He has mainly been a solo practitioner over his 14 years of practice and admitted he does not like bookkeeping, file storing and billing. He also has not taken any law office management training. Most of his testimony concerned his family life and its impact on his practice. The Respondent and his wife have seven children which includes foster children. In 2020, his wife went back to work and the responsibility for taking care of the children fell largely on him. This includes taking his children to four different schools, doctor appointments and therapy. The Respondent has also been dealing with one of his foster children's suicide attempts in 2022. He asserted that as a result of these new responsibilities and circumstances related to Covid-19 in 2020, it became increasingly difficult to manage his caseload and keep in contact with his clients. The Respondent also testified that he had "anxiety and dread" relating to correspondence from the OBA. The anxiety made it difficult for him to read or even open the correspondence. He stated he had not sought treatment for his anxiety.

¶36 The Respondent has not taken any new legal cases in months, but he continues to be a court-appointed attorney under a juvenile contract and he teaches business law at Northeastern State University. He realizes now that he needs to limit his practice to the juvenile cases and teaching. He also intends to refund $400.00 and $700.00 related to the Leroy and Webb grievances. The OBA Investigator testified that the Respondent did not bring the subpoenaed records at the deposition and he was difficult to reach, however, he was cooperative when he could be reached.

E. Discipline

¶37 This Court determines the appropriate discipline to be administered to preserve public confidence in the bar. State of Oklahoma ex rel. Okla. Bar Ass'n v. Moon, 2012 OK 77, ¶25, 295 P.3d 1, 9. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession. Id. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶19, 71 P.3d 1, 4. Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts. State of Oklahoma ex rel. Okla. Bar Ass'n v. Pacenza, 2006 OK 23, ¶18, 136 P.3d 616, 625. Discipline is fashioned to coincide with the discipline imposed upon other lawyers for like acts of professional misconduct. State of Oklahoma ex rel. Okla. Bar Ass'n v. Miller, 2020 OK 4, ¶32, 461 P.3d 187, 200. Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis. Id.

¶38 The range of discipline imposed by this Court involving allegations of abandonment of clients' cases and negligence has extended from 60 days to disbarment. State ex rel. Okla. Bar Ass'n v. McCormick, 2013 OK 110, ¶23, 315 P.3d 1015, 1022. The broad range of discipline has been dependent upon the facts of each case and has been affected by a lawyer's appreciation for their law license as shown by their participation in the OBA investigation and proceedings. The PRT recommends a two-year suspension and the Complainant recommends a suspension of two years and one day. In closing argument, the Respondent said he did not find the Complainant's recommendation to be unfair but he wanted to avoid "the logistical hurdles required to being readmitted." A two-year and one day suspension is tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart. Pacenza, 2006 OK 23, ¶34 n.71, 136 P.3d at 630 n.71.

¶39 In State ex. rel. Okla. Bar Ass'n v. McCoy, a lawyer accepted thousands of dollars in retainers to pursue post-conviction relief. 2010 OK 67, ¶¶7-22, 240 P.3d at 680-83. He failed to provide diligent representation and reasonable communication and some of his actions involved dishonesty. His failure to perform the required work caused some cases to be dismissed for failure to prosecute and some of his clients experienced incurable harm. He also failed to return unearned retainers after he offered to do so. In addition, he failed to adequately respond to the grievances filed against him. He was suspended from the practice of law for two years and one day. We noted the lawyer suffered from medical problems including debilitating depression, but such would not immunize a lawyer from imposition of disciplinary measures necessary to protect the public. Id. ¶25. 

¶40 In State ex rel. Okla. Bar Ass'n v. Passmore, a lawyer was disbarred for exhibiting a pattern of abandoning his clients' cases. 2011 OK 90, 264 P.3d 1238. Two of the cases he abandoned were dismissed for failure to prosecute. In addition, he refused to return client files when asked, failed to respond to Bar grievances, failed to attend a Bar deposition and failed to attend the PRT hearing. The PRT recommended he be suspended for two years and one day but we instead held that disbarment was an appropriate discipline. Part of that determination was based on his utter disregard for his responsibilities as a lawyer and for the procedures of this Court. Id. ¶21, 264 P.3d at 1244.

¶41 In McCormick, a lawyer was suspended for 18 months upon one count of client abandonment. 2013 OK 110, 315 P.3d 1015. McCormick represented a woman in a personal injury case. After rejecting a settlement offer, McCormick's client was unable to communicate with him. His inaction resulted in the running of the statute of limitations on her claim and the client was left to pay her own medical bills. McCormick failed to respond to the grievance. He was subpoenaed by the OBA and attended a deposition but failed to provide requested documents. He did, however, attend the PRT hearing. The OBA and PRT recommended he be suspended for one year but we did not accept the recommendation. McCormick's lack of interest in his client's matter was based on his pursuit of a business interest. We found he showed a lack of interest in his law license and provided no mitigating facts which would explain his lack of attention to his client. In holding an 18-month suspension would be an appropriate discipline, we acknowledged he had no previous grievances filed against him. Id. ¶27, 315 P.3d at 1023.

¶42 A two-year suspension is similar to the discipline imposed in McCormick. However, unlike McCormick, there were multiple grievances filed against the Respondent. Some of the grievances were found to be meritless but even in those he failed to timely respond. His misconduct has also seriously impacted his clients. Chaffin is foreclosed from pursuing her claim and Noble had to hire another attorney and spend more money trying to appeal an order and judgment against him in addition to filing a negligence action against the Respondent. Both matters were caused by the Respondent's lack of communication and diligence in representation. Further, after the OBA began investigating the grievances there was still time for the Respondent to re-file Chaffin's action but he failed to do so. His excuse in the Noble matter was that he thought he had been fired, however, the evidence presented makes his assertion unconvincing and it was his responsibility to confirm whether he had been terminated.

¶43 The Respondent's main mitigating factor is that he became overwhelmed when his family problems interfered with his practice. We have held that an excuse of being overwhelmed does not relieve a lawyer from performing with reasonable diligence. State ex rel. Okla. Bar Ass'n v. Hulett, 2008 OK 38, ¶19, 183 P.3d at 1020. Here his excuses do not explain his failure to communicate with his clients or pursue their causes. He was not so overwhelmed to take their retainers and fees. During the OBA's investigation he made offers to return unearned fees but still had not done so by the time of the PRT hearing. Nor does his mention of Covid-19 clearly show any incidence of how it interfered with his duties. He testified he had difficulty in publishing Leroy's notice to creditors but could do so in November 2020, however, he had Covid-19 that month. He provides no explanation on how that prevented him from publishing the notice or why he failed to do so after he recovered.

¶44 The Respondent failed to either respond or timely respond to many of the grievances, failed to file an answer to the complaint and failed to bring requested documents to his deposition. Of particular note, is the Respondent's failure to file responses to the Maupin and Webb grievances which were filed after his deposition and after he had been reminded by the OBA that he needed to respond to grievances. His excuse was that correspondence from the OBA made him anxious. We also find the Respondent's act of contacting a witness, Wheeler, the night before the PRT hearing to be disturbing. Wheeler had been subpoenaed by the Complainant to appear as a witness but failed to attend the hearing. The Respondent was quick to attack her grievance based upon her failure to attend.

¶45 Our responsibility in a disciplinary matter is to gauge a lawyer's continued fitness to practice law with a view to safeguard the interests of the public, the courts and the legal profession. We find the Complainant has proven the Respondent's misconduct by clear and convincing evidence and his repeated actions show a disregard for his responsibilities as a lawyer and for the procedures of this Court. He seems more concerned about the logistical hurdles he will have to undergo to be readmitted rather than the hurdles his clients have had to suffer because of his misconduct. We agree with the recommendation of the Complainant and hold the Respondent is suspended from the practice of law for two years and one day.

IV. ASSESSMENT OF COSTS

¶46 The Complainant filed its application for reimbursement of costs in the prosecution of this matter pursuant to Rule 6.16, RGDP, in the amount of $3,666.21. The application is granted.

V. CONCLUSION

¶47 The Complainant has established by clear and convincing evidence the Respondent's professional misconduct. We hold the appropriate discipline is to suspend the Respondent from the practice of law for a period of two years and one day from the date of this opinion. The Respondent is further required to pay the assessed costs of $3,666.21 within ninety days from the date of this opinion and to comply with the requirements of Rule 9.1, RGDP.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR 
TWO YEARS AND ONE DAY; ORDERED TO PAY COSTS

Winchester, Edmondson, Combs, Gurich, and Kuehn, JJ., concur;

Kane, C.J., concurs in result;

Rowe, V.C.J. and Kauger, J., concurring in part, dissenting in part;

Kauger, J., with whom Rowe, V.C.J., joins, concurring in part, dissenting in part:

"I would follow the recommendation of the PRT and suspend the Respondent for two years."

Darby, J., not voting.

FOOTNOTES

[1] 5 O.S. 2021, Ch. 1, App. 1-A, Rule 1.3:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

[2] 5 O.S. 2021, Ch. 1, App. 1-A, Rule 5.2:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

[3] 5 O.S. 2021, Ch. 1, App. 3-A, Rule 1.3:

A lawyer shall act with reasonable diligence and promptness in representing a client.

[4] 5 O.S. 2021, Ch. 1, App. 3-A, Rule 1.4:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] 5 O.S. 2021, Ch. 1, App. 3-A, Rule 1.5:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
(3) the total fee is reasonable.

[6] See note 6 supra.

[7] 5 O.S. 2021, Ch. 1, App. 3-A, Rule 3.2:

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

[8] 5 O.S. 2021, Ch. 1, App. 3-A, Rule 8.4 (d):

It is professional misconduct for a lawyer to:
. . . .
(d) engage in conduct that is prejudicial to the administration of justice;

[9] 5 O.S. 2021, Ch. 1, App. 1-A, Rule 6.4:

The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

[10] The three grievance exhibits that were not admitted concerned Count IV-Jeanne Simons Wheeler, Count V-Harlianne Thiel, and Count VI-Jackie Maupin. Tr. of PRT hearing, Jan. 9, 2024, at 203-204, 213. (Note, that on pg. 203 the presiding master states she is not admitting Ex. 20, which appears to be a misstatement considering the objection was in reference to Ex. 19, which is the Thiel grievance, and not the Respondent's response letter which is Ex. 20 and which was later admitted into evidence.)

[11] The Respondent asserted the three grievances did not fall under a business record exception found in 12 O.S. § 2803(8) and the presiding master agreed. Her ruling appears to have been based on the fact that although the grievance form is prepared by the OBA, the contents are created by the declarant. The Complainant made an offer of proof in its brief before this Court, however, it contains no argument concerning how these grievance exhibits were a business record for purposes of overcoming a hearsay objection.

[12] The presiding master refers to a case Wilcox in making her ruling but does not provide a citation. It is presumed she is referring to State ex. rel. Oklahoma Bar Ass'n v. Wilcox, 2009 OK 81, 227 P.3d 642.

 

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2024 OK 64, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SMITH
Cited

 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2001 OK 26, 23 P.3d 268, 72 OBJ 832, 
STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed

 
1994 OK 78, 880 P.2d 360, 65 OBJ 2227, 
State ex rel. Oklahoma Bar Ass'n v. Bourne
Discussed

 
2001 OK 69, 37 P.3d 763, 72 OBJ 2604, 
STATE EX. REL. OKLAHOMA BAR ASSN. v. MINTER
Discussed

 
1995 OK 25, 895 P.2d 707, 66 OBJ 1108, 
State ex rel. Oklahoma Bar Assn. v. Holden
Discussed

 
1995 OK 106, 914 P.2d 644, 66 OBJ 3187, 
State ex rel. Oklahoma Bar Assn. v. Eakin
Discussed

 
2003 OK 13, 71 P.3d 1, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed

 
2003 OK 80, 84 P.3d 710, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SHERIDAN
Discussed

 
2006 OK 23, 136 P.3d 616, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PACENZA
Discussed at Length

 
2008 OK 38, 183 P.3d 1014, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HULETT
Cited

 
2009 OK 31, 212 P.3d 1186, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed

 
2009 OK 81, 227 P.3d 642, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length

 
2010 OK 67, 240 P.3d 675, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McCOY
Discussed at Length

 
2011 OK 90, 264 P.3d 1238, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PASSMORE
Discussed

 
2012 OK 77, 295 P.3d 1, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed

 
2013 OK 110, 315 P.3d 1015, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McCORMICK
Discussed at Length

 
2020 OK 4, 461 P.3d 187, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MILLER
Discussed

 
2023 OK 27, 527 P.3d 708, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CLARK
Discussed at Length

 
2023 OK 34, 530 P.3d 24, 
STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BAILEY
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 2803, 
Hearsay Exceptions - Availability of Declarant Immaterial
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA